IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MAGGIE BAYLIS                                                              PLAINTIFF

v.                                                  CIVIL ACTION NO. 1:10-CV-00069-GHD

WAL-MART STORES, INC.                                                     DEFENDANT

MEMORANDUM OPINION

Presently before the Court are the following: Plaintiff's renewed motion to amend the pretrial order [61], Plaintiff's renewed motion for declaratory judgment that Plaintiff did not leave her employment voluntarily [65] and Defendant's renewed motion for judgment as a matter of law [69].

*A. Factual and Procedural Background*

On March 24, 2010, Plaintiff Maggie Baylis ("Plaintiff") sued Defendant Wal-Mart Stores, Inc. ("Defendant") alleging employment discrimination. After she was allegedly terminated from her position in inventory control at the Wal-Mart store in Ripley, Mississippi, Plaintiff filed a timely EEOC charge alleging she was terminated from her job because of her race and gender in violation of Title VII of the Civil Rights Act of 1964. Upon receipt of the EEOC's statutory notice of the right to sue, Plaintiff timely filed this suit in federal court.

Plaintiff alleged that she was hired in March 2001 as a floor supervisor at the Wal-Mart Store in Ripley, Mississippi; Defendant argued that Plaintiff was instead hired as an inventory control specialist for the store. Plaintiff further alleged that in October of 2008, she was promoted to a position in inventory control, which she claims was a managerial position, though she did not receive managerial pay. Plaintiff maintains she took a test to obtain a supervisor position at Wal-Mart. She was subsequently notified she had failed the test and was then

1

allegedly terminated from her position. Plaintiff, a black female, further alleged that the white male store manager replaced Plaintiff with a white male employee. Plaintiff alleged that Defendant commonly allowed persons to work as managers who failed the test. Plaintiff claimed to have suffered lost income, mental anxiety, and stress as a result of Defendant's actions and requested actual and punitive damages in an amount to be determined by a jury. In Defendant's answer, it maintains, *inter alia*, that Plaintiff voluntarily resigned from her job.

On March 17, 2011, Defendant filed a motion for summary judgment [33] and corresponding brief [34] in which it stated that Wal-Mart, Inc. nationwide had implemented a new program called the Inventory Management System ("IMS") that required stores to realign staffing for the purposes of ensuring profitability, productivity, and use of associate work hours. Prior to IMS, Plaintiff had worked as an hourly associate on the inventory control team on the day shift. Once IMS was implemented, Plaintiff was allegedly required to work two night shifts and three day shifts instead of exclusively daytime hours. Desiring to continue her exclusively daytime work schedule, Plaintiff allegedly attempted to qualify for a daytime supervisory position, but could not pass the leadership assessment test (the "test") that was an alleged prerequisite for applying for the supervisory position. Defendant maintains that the only exception to this requirement was that the current supervisors at the time IMS was implemented were grandfathered in and not made subject to the test requirement, and "those [a]ssociates who occasionally fill[ ] in for supervisors (but do not engage in supervisory tasks such as participation in employee evaluations) do not have to pass [the test]," and thus could fill in for supervisors temporarily when needed, "<u>unless</u> they wished to apply for a <u>full-time</u> hourly supervisor position," in which situation they would have to pass the test. Def.'s Mem. Br. Supp. MSJ [34] at 4 n.3. The test is comprised of "a series of hypothetical questions designed to examine an

[a]ssociate's decision-making abilities." *Id.* at 4. Defendant maintains that Plaintiff took the test twice and failed both times, and thus was not qualified for the supervisor position. Defendant further maintains that Plaintiff's white male coworker, Robert Miller, passed the test and was promoted to a managerial position. Defendant contends store personnel met with Plaintiff after she failed the supervisor test to discuss her future at Wal-Mart and offered her a full-time cashier position or a sales floor position working exclusively on the day shift, both of which Plaintiff declined. Plaintiff also declined Defendant's offer to transfer her to another store. Defendant claimed Plaintiff gave her two weeks' notice and that a black female, Rita Faye Boyd, was promoted to the newly created night shift supervisor position after Boyd passed the test. Defendant maintained that Plaintiff's employment discrimination claims should fail for the following reasons. First, Defendant contended that Plaintiff failed to make a prima facie case for employment discrimination because Plaintiff "was not qualified for the daytime supervisory position[ ] and [Plaintiff] [could] [not] establish that Wal-Mart's legitimate actions constituted discrimination." *Id.* at 2. Second, Defendant claimed that even if Plaintiff had made a prima facie case of employment discrimination, Defendant had articulated a legitimate, non-discriminatory reason for its actions (the need to restructure its staff and the fact that Plaintiff failed the test, a prerequisite to a supervisor position). Defendant contended that Plaintiff could not rebut this reason.

On March 31, 2011, Plaintiff filed a response in opposition [36] and corresponding brief [35] to the motion for summary judgment. Plaintiff admitted she had not been initially hired as a floor supervisor at the Ripley Wal-Mart store, and instead had been initially hired part-time to stock in the food department, before becoming an inventory control specialist. Plaintiff further maintained that in October 2008, she had assumed a middle management position in receiving,

3

where she was responsible for inventory control management. Plaintiff said she was informed that if she did not take and pass the supervisor test, she would not have a job, and further that Brenda Todd would help her pass the test even though Todd had never taken or passed the test herself. Plaintiff maintained that she had been an excellent employee at Wal-Mart and had complained to Wal-Mart on different occasions that she was a victim of racism by the store. Plaintiff claimed she had made a prima facie case of discrimination, as (1) she is a black female, which is a protected class under Title VII; (2) she was qualified to be a supervisor because numerous other employees who had not passed the supervisor test worked in management, and she had been a "supervisor" over three different employees; (3) Plaintiff was told to leave by the store manager, "essentially fir[ed]"; and (4) Plaintiff was replaced as "daytime supervisor over the inventory department" by a white male, Robert Miller. Plaintiff conceded that Defendant's proffered reason for the termination was legitimate and non-discriminatory, but Plaintiff claimed the proffered reason was pretextual for the following reasons: (1) Plaintiff had trained the white male who would take her place; (2) Plaintiff was told she had to pass the test in order to be considered for the day supervisor position "even though she had been performing the job for the previous six months"; (3) Defendant had allowed numerous other associates to work in supervisory positions for a period of time who had not passed the test; (4) the store manager did not allow Plaintiff to continue in the "supervisory position" because "she was a black female who had complained about race discrimination in the past"; and (5) Defendant did not offer Plaintiff a comparable job, but instead a demotion. Pl.'s Br. Opp'n to Def.'s MSJ [35] at 12. Plaintiff argued that "there can be little doubt that the fact she is a black female played a role in Defendant's actions." *See id.* at 13.

Defendant asserted in reply [39] that the others who Plaintiff claimed served in

4

supervisory positions who had not passed the were in fact either grandfathered in as supervisors prior to the implementation of the test, or were associates who on occasion temporarily filled in for supervisors. Defendant further contended that Plaintiff was attempting to "bootstrap a retaliation claim which she failed to plead in both her [c]omplaint and her EEOC charge to demonstrate discrimination due to her race plus her gender." Def.'s Rebuttal Supp. MSJ [39] at 2. Defendant argued that Plaintiff's position as an inventory control associate with exclusively daytime hours became obsolete after the IMS was implemented; thus, Defendant "could not have offered her a position identical or comparable to her former position because [such position] did not exist." *Id.* Defendant argued Plaintiff had misstated certain facts, among them, that Plaintiff had complained to the Wal-Mart hotline that she was the victim of race discrimination at the store, when, in fact, she had failed to provide details of such discrimination upon request from the hotline and stated that she would drop the issue. Defendant further maintained that Plaintiff misrepresented that she had held a middle management position, even though she had stated herself that her position was not a managerial position. Finally, Defendant maintained that Plaintiff had not been hired as a supervisor because she was not qualified for a supervisor position, and that she had demonstrated no evidence of pretext, nor had she advanced a viable mixed motives theory.

The Court entered an Order [42] denying Defendant's motion for summary judgment, finding that genuine issues of material fact existed and Defendant had failed to show it was entitled to judgment as a matter of law. On July 18, 2011, trial commenced in this Court. The Court denied Defendant's motion *in limine* to exclude certain evidence [40], as the Court's policy is to avoid making all-encompassing rulings *in limine* prior to the start of trial. Confronting certain issues of counsel prior to trial, the Court stated that the claims in the case

were restricted to race and gender and did not include retaliation, which had never been pled and was not included in the pretrial order. Trial Tr. Vol. I [80] at 7.

During the course of trial, upon objection by Defendant's counsel as to testimony regarding the validation of the test, the Court reiterated that Defendant's articulated reason for the employment decision was that she failed the test and thus did not qualify for the supervisory position; the Court further stated that the Plaintiff maintained the employment decision was pretext. Trial Tr. Vol. II [81] at 8. Although the Court allowed limited questioning regarding the test, the Court stated that counsel should not address the validity of the content of the specific questions on the test. *Id.* at 8, 11. Defendant moved for judgment as a matter of law at the close of Plaintiff's proof, and the Court ruled as follows:

> The Court in the case *sub judice* is troubled by the plaintiff's proof as to qualifications, given the proof regarding this test administered by the defendant. I do not grant the judgment as a matter of law as to the race and gender claims at this juncture. I want to address this at the conclusion of all the proof in the case.
>
> The defendant's motion for judgment as a matter of law as to a punitive damage claim is well-taken and is sustained.

*Id.* at 258.

On July 20, 2011, Plaintiff moved pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to amend/correct the pleadings [52] to conform to the proof at trial stemming from two incidents: one concerning a complaint that a supervisor was racist and one relating to the content of an exhibit which was the notes relevant to a telephone call Plaintiff placed to the Wal-Mart hotline approximately a week after she left her employment at Wal-Mart. Plaintiff claimed that this proof raised new claims or issues in the case: that a proximate cause of Plaintiff's discharge was that Plaintiff reported illegal activity, and that Plaintiff had been retaliated against

6

for complaining about race discrimination. The Court subsequently denied this motion at trial, finding that the status of the record did not raise new claims or issues. Plaintiff additionally moved on that date to submit supplemental jury instructions [53] to address the points raised at trial; the Court also denied this motion at trial.

At the close of Defendant's case, Defendant renewed its motion for judgment as a matter of law. The Court denied this motion, finding that "when you look to the evidence in the light, and with all reasonable inferences most favorable to the plaintiff, that the motion for judgment as a matter of law is not well-taken and is overruled. We'll go to the jury on the issues of race discrimination and gender discrimination." Trial Tr. Vol. III [82] at 69. The jury was given special interrogatories in which they were asked the following:

(1)  Was the plaintiff terminated involuntarily from her employment by the defendant, Wal-Mart?
(2)  Do you find from a preponderance of the evidence in this case the plaintiff's race and/or gender was a motivating factor in the decision of Wal-Mart to terminate her employment?
(3)  Do you find from a preponderance of the evidence in this case the plaintiff's race and/or gender was a motivating factor in Wal-Mart's failure to promote Plaintiff to the position of Inventory Management Team Supervisor in 2009?

Jury Verdict [60] at 1.

During deliberations, the jury submitted a note to the Court stating: "We are deadlocked on Questions 2 and 3. Given the exhibits in evidence that we were provided, we cannot reach a unanimous decision." Trial Tr. Vol. IV [83] at 3. The Court brought the jury back in the courtroom and gave them a modified *Allen* charge, *see Allen v. United States*, 164 U.S. 492, 501–502, 17 S. Ct. 154, 41 L. Ed. 528 (1896)), urging the jurors to continue deliberations to achieve a final verdict on all counts and granting the jurors further time to deliberate. However, even after further deliberations, the jury remained deadlocked on Questions 2 and 3. The Court

informed counsel for both Plaintiff and Defendant outside the presence of the jury: "[If] I have to declare a mistrial, then I will take that verdict on that Question No. 1. And then I will give . . . both of you an opportunity to brief that as to . . . whether it's collateral estoppel on any substantive trial or not as to that question." *Id.* at 11. Testimony during the trial was conflicting on the fact question of whether or not Plaintiff left her employment voluntarily or involuntarily. *See id.* at 31, 33–34, 105, 124, 170, 182–83, 223, 243. But in the course of deliberations, the jury had unanimously decided that Plaintiff was involuntarily terminated in response to Question 1. *Id.* at 16. The Court declared the case a mistrial and stated that the case would be returned to the Court's trial docket for a subsequent trial. *Id.* Trial was concluded on July 21, 2011. Subsequent pretrial motions have been filed by both parties, and will be addressed as follows.

## B. *Plaintiff's Motion for Declaratory Judgment*

On August 19, 2011, Plaintiff filed a motion for declaratory judgment [65] contending that the Court should declare based upon collateral estoppel that Plaintiff was involuntarily terminated from her employment by Defendant based upon the unanimous jury finding. The Court discussed the possibility of the collateral estoppel motion with counsel for both parties; thus, there is no question that unfair surprise does not apply. Defendant filed a response in opposition [76] on September 12, 2011, in which Defendant maintains that "[t]he jury's partial findings are not subject to collateral estoppel because: (1) there was no full and final judgment; and (2) any findings were ultimately tainted by [Plaintiff's] improper arguments regarding Wal-Mart's Leadership Assessment Test."[1] Def.'s Opp'n to Pl.'s Mot. For Declaratory J. [76] at 1–2. Defendant further contends that Plaintiff was unfairly allowed to advance a disparate impact

---

[1] The Court did, in fact, allow Plaintiff to question witnesses relating to the test, as the test was crucial to the case and was referred to throughout the pleadings as either a prerequisite for a managerial position or a guise as to why Plaintiff was not promoted to a managerial position at Wal-Mart. The Court instructed counsel not to go into the possible validity or invalidity of the test in question.

8

theory at trial.

On September 19, 2011, Plaintiff argued in reply [77] that Defendant's argument was

> 'Heads I win, tails you lose.' If the jury had answered Interrogatory No. 1 as "no," then Wal-Mart would have been entitled to a judgment for the Defendant on [Plaintiff's] wrongful termination claim. [Plaintiff] would then be collaterally estopped to pursue any claim for wrongful termination.

Pl.'s Reply Supp. of Mot. for Declaratory J. [77] at 1. Plaintiff further argued that whether Plaintiff was voluntarily terminated from her position "does not address the issue of whether [Plaintiff] was a victim of employment discrimination. The issue of whether [Plaintiff] voluntarily left her employment, and the issue of whether she was discriminated against, are distinct issues." *Id.* at 2. Plaintiff maintained that if Defendant actually was shocked with the Plaintiff's evidence at trial, Defendant's remedy was to seek a continuance, which Defendant failed to do.

The Court notes that the doctrine of collateral estoppel applies in both civil and criminal proceedings. *See, e.g., Yeager v. United States*, 557 U.S. 110, 129 S. Ct. 2360, 2367 n.4, 174 L. Ed. 2d 78 (2009). "In civil litigation, where the doctrine of collateral estoppel first developed, this doctrine has meant simply that when an issue of fact has necessarily been determined by a valid and final judgment, the issue cannot be relitigated between the same parties in any future lawsuit." *Humphries v. Wainwright*, 584 F.2d 702, 705 (5th Cir. 1978). *See also Wolfson v. Baker*, 623 F.2d 1074 (5th Cir. 1980), *cert. denied*, 450 U.S. 966, 101 S. Ct. 1483, 67 L. Ed. 2d 615 (1981). In the civil context, the Supreme Court has stated the purpose of the doctrine as follows:

> Indeed, from *Cromwell v. County of Sac*, 94 U.S. 351, 24 L. Ed. 195 (1877), to *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981), this Court has consistently emphasized the importance of the related doctrines

9

> of res judicata and collateral estoppel in fulfilling the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction. . . . Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties. *Montana v. United States*, [440 U.S. 147, 153, 99 S. Ct. 970, 973, 59 L. Ed. 2d 210 (1979)]. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S. Ct. 645, 649 n.5, 58 L. Ed. 2d 552 (1979). Thus, invocation of . . . collateral estoppel "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, [449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980)].

*Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 467 n.6, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *see also Ashe v. Swenson*, 397 U.S. 436, 464, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) (Burger, J., dissenting) ("In civil cases the doctrine was justified as conserving judicial resources as well as those of the parties to the actions and additionally as providing the finality needed to plan for the future. It ordinarily applies to parties on each side of the litigation who have the same interest as or who are identical with the parties in the initial litigation."). In a Fourth Circuit dissent, one judge reasoned that "collateral estoppel applies only where the second case is based on a different cause of action in a civil suit." *See United States v. Davis*, 369 F.2d 775, 782 (4th Cir. 1966) (Bell, J., dissenting). However, here, the Court is confronted with a civil action which must be retried and to which the jury answered one of three interrogatories. Whether Plaintiff was fired or left employment voluntarily was an issue of fact in the case. However, this Court finds that whether she left her employment voluntarily was not necessarily determined by a valid and final judgment. A mistrial is anything but a final judgment; it is the promise of a new trial and further occurrences prior to the issuance of a final judgment. *See e.g., Esneault v. Waterman Steamship Corp.*, 449 F.2d 1296 (5th Cir. 1971) (stating that in the civil context "a mistrial is not an appealable final judgment"); *see also Ricketts v. Adamson*, 483 U.S. 1, 24, 107 S. Ct. 2680, 97

10

L. Ed. 2d 1 (1987) (dicta) (stating that in the criminal context a mistrial does not result in a final judgment). Accordingly, the Court finds that Plaintiff's motion for declaratory judgment [65] should be denied. The jury's partial finding that Plaintiff was involuntarily terminated will not bind the jury in the upcoming trial.

### C. *Plaintiff's Renewed Motion to Amend the Pleadings*

On August 1, 2011, Plaintiff renewed her motion to amend or correct the pretrial order [61] that certain proof presented at trial created new theories for Plaintiff's discharge concerning two incidents: one concerning a complaint that a supervisor was racist, and one relating to the content of an exhibit which was the notes relevant to a telephone call Plaintiff placed to the Wal-Mart hotline approximately a week after she left her employment at Wal-Mart. Plaintiff claimed that this proof raised the theory that a proximate cause of Plaintiff's discharge was that Plaintiff reported illegal activity, and that Plaintiff was retaliated against for complaining about race discrimination.

Plaintiff brings this motion to amend pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, which provides in pertinent part that "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." *See* FED. R. CIV. P. 15(b)(1). "[T]he district court can allow amended pleadings at any point, even after judgment, 'when justice so requires,' and also to conform to the evidence." *Barkoo v. Melby*, 901 F.2d 613, 617 (7th Cir. 1990) (en banc). Denial of a motion to amend is warranted for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of the amendment." *Rosenblatt v. United Way of*

11

*Greater Hous.*, 607 F.3d 413, 420 (5th Cir. 2010) (internal quotation and punctuation omitted).

In the case *sub judice*, Plaintiff first sought to amend the pleadings during the proceeding that would later be declared a mistrial; this request was denied. Plaintiff has renewed this motion after the declaration of mistrial. The Court finds that the pleadings may be amended to reflect these two new theories of recovery because (1) Plaintiff does not attempt to amend the pleadings for undue delay, in bad faith, or with dilatory motive; (2) Defendant did not "satisfy the Court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits," *see* FED. R. CIV. P. 15(b)(1); and (3) Defendant will have ample time to prepare its defenses accordingly prior to the commencement of the new trial in this cause. The Court grants Defendant's request for the entering of a limited scheduling order to permit limited discovery on the new theories of recovery and the filing of a dispositive motion relating to these new theories. The Court stresses that Plaintiff has only amended its theories of recovery to include the following: a proximate cause of Plaintiff's discharge was that Plaintiff reported illegal activity, and that Plaintiff was retaliated against for complaining about race discrimination. <u>Under no circumstances based on this limited amendment of the pleadings will Plaintiff be able in trial to attack the validity of the supervisory test</u>, as this was nowhere pled in the case prior to the mistrial and is not now part of allowed amendment to the pleadings. Further, Plaintiff's counsel cannot advance a disparate impact theory. With respect to the test, based on prior pleadings and proof at the previous trial, counsel may explore whether Wal-Mart seriously considered the test a prerequisite to a supervisory position. Although this is a fine line, it is one which must be followed by counsel.

### D. *Defendant's Renewed Motion for Judgment as a Matter of Law*

On August 26, 2011, Defendant renewed its motion for judgment as a matter of law [69]

pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. A court may grant a Rule 50(a) motion "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). "A Rule 50(a) motion is a challenge to the legal sufficiency of the evidence." *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 324 (5th Cir. 2011). In ruling on such a motion, "the court must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *See id.* at 325 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000)). The Court finds that Defendant's renewed motion for judgment as a matter of law should be denied. Viewing all inferences in favor of the Plaintiff, the Court finds that the evidence is legally sufficient for a reasonable jury to find for the Plaintiff.

A separate order in accordance with this opinion shall issue this day.

It is SO ORDERED, this the 23 day of March, 2012.

/s/ Glen H. Davidson
SENIOR JUDGE

13